UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LABRITTANY MARTENIQUE EADDY,

                     Plaintiff,

         -vs-                                        14-CV-766-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.

---

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ., of Counsel) Buffalo, New York, for Plaintiff

                        WILLIAM J. HOCHUL, JR., United States Attorney (GRAHAM MORRISON, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 8, 2015 (Item 14).

Plaintiff Labrittany Martenique Eaddy initiated this action on September 11, 2014 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 10, 12).  For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

**BACKGROUND**

Plaintiff was born on May 27, 1982 (Tr. 30, 133).[1]  She filed an application for SSDI benefits on November 30, 2010, alleging disability due to asthma, depression, anxiety, and Attention Deficit Disorder ("ADD"), with an onset date of August 28, 2009 (*see* Tr. 133-39). The application was denied administratively on April 5, 2011 (Tr. 60-63).  Plaintiff requested a hearing, which was held on July 26, 2012 before Administrative Law Judge ("ALJ") Valorie Stefanelli (Tr. 26-58).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Vocational expert ("VE") Christina Boardman also appeared and testified.

On April 26, 2013, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 7-17).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found that plaintiff's impairments (identified as asthma and mood disorder), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 12-13). The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony and written statements about her symptoms, and determined that plaintiff had the residual

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

functional capacity ("RFC") to perform work at the "light"[2] exertional level, limited to "low stress work with few changes and few decisions. She is unable to tolerate exposure to crowds, interacting with the public, more than casual non-intense contact with others, and exposure to extreme temperatures and irritants" (Tr. 13-16). Given these limitations, the ALJ found that plaintiff was unable to perform her past relevant work as a personal attendant, but considering her age (27 as of the alleged onset date), education (limited–11th grade, no GED), work experience, and RFC, and relying on the VE's testimony regarding the extent to which her assessed functional limitations erode the occupational base for unskilled light work, the ALJ found that plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 16-17). Using Rule 202.18 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 16-17).

The ALJ's decision became the final decision of the Commissioner on July 15, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

---

[2]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ did not appropriately consider the severity of plaintiff's borderline intellectual functioning, and failed to incorporate the findings of consultative examining physician Sandra Boehlert, M.D., in her RFC assessment.  *See* Items 10-1, 13.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Item 12-1.

## DISCUSSION

### I.  Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the

question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

II.     **Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C.

§ 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). As indicated above, the regulations set forth a five step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities ...." 20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and

RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ's Disability Determination

In this case, ALJ Stefanelli determined at step one of the sequential evaluation that the record evidenced a period of twelve consecutive months after the alleged onset date during which plaintiff was not engaged in substantial gainful activity (Tr. 12).  At step two, the ALJ determined that plaintiff's physical and mental impairments are "severe" as that

term is defined in the regulations because they each impose more than slight limitations on her ability to perform basic work activities (*id.*).

At step three, the ALJ found no medical evidence of chronic asthmatic bronchitis or attacks requiring physician intervention occurring at least once every two months in spite of prescribed treatment, as required to meet or medically equal the criteria of Listing 3.03 (*Asthma*) (Tr. 13). The ALJ also found that plaintiff's mental impairment did not satisfy either the "Paragraph B" or "Paragraph C" criteria of Listing 12.04 (*Affective Disorders*).[3] In making this finding, the ALJ referenced the report of consultative examiner Sandra Jensen, Ph.D., who conducted a psychiatric evaluation of plaintiff on February 28, 2011, and found no restriction in activities of daily living; moderate difficulties with social functioning; mild difficulties with regard to concentration, persistence or pace due to limited intellectual functioning; and no extended episodes of decompensation (Tr. 13, 518-22).

---

[3]To satisfy this criteria, the claimant must show (among other things) that his or her impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of Listing 12.04 by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

1. Repeated episodes of decompensation, each of extended duration;
2. A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate; or
3. Current history of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (Paragraph "C" criteria).

As indicated above, the ALJ next determined that plaintiff had the residual functional capacity for light work, limited to work involving low stress with few changes and few decisions; no exposure to crowds; no interaction with the public, or more than casual non-intense contact with others; and no exposure to extreme temperatures or respiratory irritants (Tr. 13-14). In making this assessment, the ALJ discussed the objective medical evidence in the record, along with plaintiff's hearing testimony regarding her past work experience, activities of daily living, and the functional limitations caused by the symptoms of her impairments (Tr. 14-15). The ALJ gave "great weight" to Dr. Jensen's medical source statement that, based on the results of her consultative evaluation, plaintiff did not demonstrate "psychiatric or cognitive problems that would significantly interfere with [her] ability to function on a daily basis" (Tr. 15, 521). The ALJ also accorded "great weight" to the opinion of Dr. Boehlert, set forth in the report of her consultative internal medicine examination of plaintiff on February 24, 2011 (Tr. 509-12), indicating that plaintiff had "mild limitation to heavy exertion in the standing position, heavy lifting, and mild to moderate limitation to repetitive standing" (Tr. 51, 512). The ALJ also referred to treatment records revealing tobacco and marijuana use, lack of medication, failure to comply with prescribed treatment, return to substantial gainful work in August 2011, and other evidence indicating that although plaintiff's physical and mental impairments "may cause some limitation in functioning, they have not been credibly shown to prevent her from performing basic work activities" (Tr. 15-16).

At steps four and five of the sequential evaluation, the ALJ found that plaintiff was unable to perform any of her past relevant work, but considering her RFC, age, education, and work experience in conjunction with the Grids, and considering the testimony of the

VE regarding the extent to which these limitations might erode the occupational base, the ALJ found that plaintiff was capable of making a successful adjustment to other jobs existing in significant numbers in the national economy, and was therefore "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 16-17).

## IV.     Plaintiff's Motion

### A.     Learning Disability Severity

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to consider the severity of plaintiff's learning disability at step two of the sequential evaluation process.  The determination of "severity" at step two is guided by the regulations as follows:

> At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

20 C.F.R. § 404.1520(a)(4)(ii).  To be medically determinable, an impairment:

> ... must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms....

20 C.F.R. § 404.1508.  To be severe, an impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R § 404.1521(a), which are "the abilities and aptitudes necessary to do most jobs," listed in the regulations as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;

  (3) Understanding, carrying out, and remembering simple instructions;
  (4) Use of judgment;
  (5) Responding appropriately to supervision, co-workers and usual work situations; and
  (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

  As already indicated, the claimant bears the burden to present medical evidence establishing the severity of her alleged impairments. *Flagg v. Colvin*, 2013 WL 4504454, at *7 (N.D.N.Y. Aug. 22, 2013) (citing 20 C.F.R. § 404.1512(a)). Although the Second Circuit has held that the ALJ's function at the second step of the sequential evaluation is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

  In this case, plaintiff has failed to meet her burden to present competent medical evidence of a learning disability that has significantly limited her mental ability to perform basic work activities. Instead, plaintiff relies on records from the Rochester City School District Committee on Special Education for school year 1999-2000 (when plaintiff was in the 10th grade) indicating plaintiff's historical classification (since the second grade) as "Learning Disabled," and recommending continued placement in a 15:1 special education classroom setting (*see* Tr. 524-55). These school records indicate that plaintiff's overall intellectual functioning at age 17 was assessed in the "low average" range (Tr. 554), consistent with Dr. Jensen's findings upon consultative psychiatric examination in February

2011 indicating intellectual functioning as "probably in the below average range" (Tr. 520). As discussed above, the ALJ considered Dr. Jensen's findings and opinions, and accorded them great weight.

In any event, the Second Circuit has held that any error caused by the ALJ's failure to properly consider an impairment's severity at step two is harmless where the ALJ found other severe impairments and proceeded with the subsequent steps of the sequential evaluation. *See Reices–Colon v. Astrue*, 2013 WL 1831669, at *1 (2d Cir. 2013) (summary order; citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010). Here, the ALJ determined at step two that plaintiff's asthma and mood disorder impairments were severe, and proceeded through the remaining steps of the sequential evaluation process, giving full consideration to the limitations imposed by those impairments in her assessment of plaintiff's RFC.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly consider the severity of plaintiff's learning disability.

**B.   RFC**

Plaintiff also contends that the Commissioner's determination should be reversed because the ALJ failed to incorporate the findings of the consultative examining physician, Dr. Boehlert, in assessing RFC. This contention is likewise rejected.

As noted above, in determining that plaintiff had the RFC for light work with certain nonexertional limitations, the ALJ gave "great weight" to Dr. Boehlert's opinion that plaintiff had "mild" limitations with respect to heavy exertion in the standing position and heavy lifting, and "mild to moderate" limitation with respect to repetitive standing (Tr. 512). The

ALJ also noted Dr. Boehlert's findings upon physical examination that plaintiff had no abnormalities of the musculoskeletal system or extremities; was in no acute distress; had a normal gait; could walk on her heels and toes without difficulty; demonstrated full squat and normal stance; used no assistive devices; needed no help changing for the examination, or getting on and off the exam table; and could rise from a chair without difficulty (Tr. 15, 510-11). There is nothing in the record before the court to show or suggest that these findings are inconsistent with the exertional requirements for light work as set forth at 20 C.F.R. § 404.1567(b). *See* note 2 *infra*; *see also Crews v. Astrue*, 2012 WL 1107685, at *17 (S.D.N.Y. Mar. 27, 2012) (consultative examiner's findings of "mild-to-moderate limitations with bending, lifting, carrying, and with heavy exertional work, as well as with prolonged periods of sitting, standing, or climbing stairs" consistent with RFC for light work), *report and recommendation adopted*, 2012 WL 2122344 (S.D.N.Y. June 12, 2012); *Carpenter v. Astrue*, 2010 WL 2541222, at *5 (W.D.N.Y. June 18, 2010) (consultative examiner's findings of moderate limitation in prolonged standing, walking, kneeling, and climbing consistent with RFC for light work).

Accordingly, plaintiff is not entitled to reversal on the ground that the ALJ failed to fully incorporate the consultative examiner's functional limitations in her RFC assessment.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision in this case was made in accordance with correct legal standards, and is supported by substantial evidence. The Commissioner's determination must therefore be upheld. Accordingly, plaintiff's

motion for judgment on the pleadings (Item 10) is denied, the Commissioner's motion for judgment on the pleadings (Item 12) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin<br>JOHN T. CURTIN<br>United States District Judge

Dated:   December 9, 2015
p:\pending\2014\14-766.ssdi.dec2.2015.wpd